Barnes H. Ellis, OSB No. 640325
bhellis@stoel.com
Stephen A. Redshaw, OSB No. 944146
saredshaw@stoel.com
Timothy W. Snider, OSB No. 034577
twsnider@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

       Attorneys for Defendants


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| DOUGLAS ASHBY, CAROL PORTO, GRANT WENZLICK, LEO NEWBERRY, and EVELYN BROEFFLE, | Civil No. CV01-1446-BR |
| Plaintiffs, | DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS REGARDING WILLFULNESS AND STATUTORY DAMAGES AND IN OPPOSITION TO THE UNITED STATES' REPLY BRIEF IN SUPPORT OF CONSTITUTIONALITY OF FCRA'S STATUTORY DAMAGES PROVISION |
| v. | |
| FARMERS INSURANCE COMPANY OF OREGON and FARMERS GROUP, INC., | |
| Defendants. | |


DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO
APPROVE PROPOSED JURY INSTRUCTIONS

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 2

    A.    The Government and Plaintiffs Concede The FCRA's Statutory Damages
        Remedy Is At Least Partly Compensatory, Which Necessarily Requires
        The Jury To Consider Individualized Evidence Relevant To Its
        Compensatory Purpose. ........................................................................... 2

        1.    Neither Plaintiffs Nor The Government Refute Defendants'
            Showing That Basic Principles Of Statutory Construction Indicate
            The FCRA's Statutory Damages Are Wholly Compensatory. .................. 2

        2.    Even Under Plaintiffs' And The Government's Interpretations,
            Evidence Relating To Compensatory Purposes Is Relevant To The
            Jury's Determination Of The Amount Of Statutory Damages To
            Award ..................................................................................................... 3

        3.    Evidence Relating To Individual Issues Cannot Be Excluded
            Simply Because This Is A Class Action. .................................................. 6

    B.    Plaintiffs' Instructions Convert The Statutory Damages Provision Into A
        Punitive One, Contrary To The FCRA And The Constitution. ........................... 7

        1.    The Supreme Court's Punitive Damages Jurisprudence Applies To
            Statutory Penalties Regardless Of Their Label. ........................................ 8

        2.    Plaintiffs' And The Government's Interpretation Of The FCRA's
            Remedial Scheme Would Authorize Improper Double Punishment. ........ 9

        3.    The Government's Claim That An Award Of Statutory Damages
            May Be Based Upon "Potential," Unproven Harm Is Incorrect. ............. 11

    C.    The Government And Plaintiffs Fail To Address Key Aspects Of
        Defendants' Vagueness Challenge. ................................................................... 12

    D.    The Court Must Consider The Potential Excessiveness Of Any Damages
        Award In Crafting Appropriate Jury Instructions. ............................................. 15

    E.    Any Aggregated Award, Even The Statutory Minimum, Would Violate
        Due Process In The Absence Of Any Evidence Of Individualized Harm. .......... 16

        1.    Any Aggregated Award, Even The Statutory Minimum, Would Be
            "Wholly Disproportionate" Or "Obviously Unreasonable" Under
            Traditional Due Process Standards. ........................................................ 17

        2.    Any Aggregated Award, Even The Statutory Minimum, Would Be
            Excessive Under The Supreme Court's Punitive Damages Case
            Law. ..................................................................................................... 19

III.    CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

Page

## Cases

*Arcila v. Adidas Promotional Retail Operations, Inc.*,
   488 F. Supp. 2d 965 (C.D. Cal. 2007) ...................................................................16

*Azoiani v. Love's Travel Stops & Country Stores, Inc.*,
   2007 U.S. Dist. LEXIS 96159 (C.D. Cal. Dec. 18, 2007) ........................................15

*BMW of North America, Inc. v. Gore*,
   517 U.S. 559 (1996)...................................................................................9, 12, 20

*Bailey v. Container Corp. of America*,
   660 F. Supp. 1048 (S.D. Ohio 1986) .....................................................................10

*Charter Commc'ns. Entm't I, DST v. Burdulis*,
   460 F.3d 168 (1st Cir. 2006) ..................................................................................5

*Clark v. Martinez*,
   543 U.S. 371 (2005)...............................................................................................15

*Columbia Cable TV Co. v. McCary*,
   954 F. Supp. 124 (D.S.C. 1996)...............................................................................6

*Comcast of Massachusetts I, Inc. v. Naranjo*,
   303 F. Supp. 2d 43 (D. Mass. 2004) .......................................................................5

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc*,
   532 U.S. 424 (2001).  ......................................................................................13, 19

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) .................................................................................13

*DIRECTV, Inc. v. Brown*,
   371 F.3d 814 (11th Cir. 2004) ..................................................................................4

*DirecTV v. Haskell*,
   344 F. Supp. 2d 761 (D. Me. 2004) .........................................................................5

*DIRECTV, Inc. v. Huynh*,
   318 F. Supp. 2d 1122 (M.D. Ala. 2004) ...................................................................6

*Dowell v. Wells Fargo Bank, NA*,
   517 F.3d 1024 (8th Cir. 2008) ..................................................................................3

Portlnd3-1642387.1 0045556-00006

# TABLE OF AUTHORITIES

Page

*Exxon Shipping Co. v. Baker,*
    544 U.S. ___, 128 S. Ct. 2605 (2008) ............................................................20

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,*
    807 F.2d 1110 (2d Cir. 1986) ..........................................................................5

*Grimes v. Rave Motion Pictures Birmingham, LLC,*
    552 F. Supp. 2d 1302 (N.D. Ala. 2008) ........................................................1, 20

*HIT Entm't, Inc. v. Nat'l Discount Costume Co., Inc.,*
    552 F. Supp. 2d 1099 (S.D. Cal. 2008) ............................................................5

*Helms v. ConsumerInfo.com, Inc.,*
    236 F.R.D. 561 (N.D. Ala. 2005) ......................................................................16

*Hillis v. Equifax Consumer Services, Inc.,*
    237 F.R.D. 491 (N.D. Ga. 2006) ......................................................................16

*In re Rufener Const., Inc.,*
    53 F.3d 1064 (9th Cir. 1995) ............................................................................3

*In re Trans Union Corp. Privacy Litig.,*
    211 F.R.D. 328 (N.D. Ill. 2002) ........................................................................3

*Jones v. United States,*
    529 U.S. 848 (2000) ..........................................................................................15

*KingVision Pay Per View, Ltd. v. Boom Town Saloon, Inc.,*
    98 F. Supp. 2d 958 (N.D. Ill. 2000) ................................................................6

*Kline v. Coldwell, Banker & Co.,*
    508 F.2d 226 (9th Cir. 1974) ............................................................................16

*Legge v. Nextel Commc'ns, Inc.,*
    2004 U.S. Dist. LEXIS 30333 (C.D. Cal. June 25, 2004) ..............................15

*London v. Wal-Mart Stores, Inc.,*
    340 F.3d 1246 (11th Cir. 2003) ........................................................................16

*Microsoft Corp. v. Nop,*
    549 F. Supp. 2d 1233 (E.D. Cal. April 17, 2008) ..........................................5

*Missouri Pacific Railway Co. v. Tucker,*
    230 U.S. 340 (1913) ..........................................................................................18

# TABLE OF AUTHORITIES

Page

*Morford v. City of Omaha,*
  98 F.3d 398 (8th Cir. 1996) ........................................................................4

*Moses v. K-Mart Corp.,*
  905 F. Supp. 1054 (S.D. Fla. 1995) ..........................................................10

*Mourning v. Family Publications Service, Inc.,*
  411 U.S. 356 (1973)....................................................................................14

*Murray v. GMAC Mortg. Corp.,*
  434 F.3d 948 (7th Cir. 2006) .....................................................................16

*Navellier v. Sletten,*
  262 F.3d 923 (9th Cir. 2001) .....................................................................13

*Neal v. Honeywell, Inc.,*
  995 F. Supp. 889 (N.D. Ill. 1998) .............................................................10

*Ortiz v. Fibreboard Corp.,*
  527 U.S. 815 (1999).......................................................................................7

*Parker v. Time Warner Entm't Co., L.P.,*
  331 F.3d 13 (2d Cir. 2003).............................................................9, 17, 18

*Philip Morris USA v. Williams,*
  127 S. Ct. 1057 (2007)..........................................................................12, 20

*Reynolds v. Octel Communications Corp.,*
  924 F. Supp. 743 (N.D. Tex. 1995) ...........................................................10

*Reynolds v. Spears,*
  93 F.3d 428 (8th Cir. 1996) .........................................................................4

*St. Louis, I. M. & S. Ry. Co. v. Williams,*
  251 U.S. 63 (1919)................................................................................18, 19

*Six Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) .........................................................6, 13, 17

*Southwestern Telegraph & Telephone Co. v. Danaher,*
  238 U.S. 482 (1915)......................................................................................18

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
  538 U.S. 408 (2003)...................................................................9, 10, 16, 20

## TABLE OF AUTHORITIES

Page

*TXO Production Corp. v. Alliance Resources Corp.*,
  509 U.S. 443 (1993).........................................................................................................12

*United States v. Batchelder*,
  442 U.S. 114 (1979).........................................................................................................14

### Statutes, Rules and Other Authorities

15 U.S.C. § 1681n.................................................................................................................2, 3

18 U.S.C. § 3553.................................................................................................................14, 15

Cable Communications Policy Act of 1984.................................................................5, 6, 9, 18

Copyright Act...................................................................................................................5, 14

Electronic Communications Privacy Act of 1986 ..................................................................4

Fair Credit Reporting Act ............................................................................................. passim

## I.    INTRODUCTION

The Court posed to the parties one very practical question:  What instructions should the Court give the jury regarding the amount of statutory damages, if any, it may award?  The Court's inquiry was prompted, at least in part, by the FCRA's complete lack of standards to guide the jury in making a statutory damage award:  "I can't just send [the jury] a statutory statement from zero—or 100 to a thousand and say, Go do what you think is right.  I don't think I can do that legitimately.  There has to be some means by which [the jury] could exercise discretion."  Tr. of Proceedings at 14 (July 21, 2008).  Indeed, it was this complete lack of statutory guidance that was the focus of Defendants' vagueness argument and the reason that the *Grimes* court held the statute unconstitutional.

In response to the Court's question, Plaintiffs have essentially said that no guidance and no criteria are necessary.  *See* Pl. Br. at 4-6.  Instead, Plaintiffs would have the Court instruct the jury simply to pick a number between $100 and $1,000 based on whatever factors the jury thinks relevant.  As Defendants previously have observed, this is no different than asking the jury to pick a number out of a hat.  *See* Opp. at 1-2.  The Government appears indifferent to this fact, and suggests that any problems can be cured after the fact—as if the Court's role were simply to sit back and watch a constitutional train wreck happen and then try to clean the mess up later. *See* U.S. Br. at 17-18.  As discussed below, the Government's suggestion is wrong as a matter of law.  But it also makes no practical sense.  The Court expressed legitimate concerns about how to conduct a jury trial in this case—concerns that should be addressed *before* the trial takes place.

Plaintiffs' proposed jury instructions do nothing to address those concerns, are inconsistent with the text and structure of the FCRA, and exacerbate its constitutional problems. In marked contrast, Defendants' proposed instruction not only provides guidance as to the factors the jury should consider, it also is consistent with the compensatory nature of the FCRA's statutory damages remedy, thereby lessening the incurable constitutional problems. Furthermore, Defendants' proposed instruction underscores the need for a process than can accommodate the necessarily individualized evidence relevant to an award of statutory damages

Page 1 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

for each class member.  The potential processes the Court may adopt if it does not declare the FCRA unconstitutional include (1) a willfulness trial followed by decertification of the class for purposes of determining damages, consistent with those courts that have refused to certify classes under the FCRA to avoid constitutional problems, or (2) bifurcation of a willfulness jury trial from a claims process for determining statutory damages on a class-member-by-class-member basis.[1]  If the Court declines these alternatives, it should give Defendants' instruction.

Rather than addressing Defendants' arguments regarding Plaintiffs' fundamentally flawed instructions and proposing a practical solution for the Court, Plaintiffs' and the Government's reply briefs knock down strawman arguments Defendants never made (like the applicability of the Double Jeopardy Clause), misconstrue relevant precedent, and generally duck the critical issue of the necessary implications of the compensatory purpose of the FCRA's statutory damages provision for a proper jury instruction.  Although Defendants cannot, within the confines of this brief, address all of the errors in the Government's and Plaintiffs' 62 cumulative pages of Replies, Defendants focus on the most salient mistakes.

## II.    ARGUMENT

**A.    The Government and Plaintiffs Concede The FCRA's Statutory Damages Remedy Is At Least Partly Compensatory, Which Necessarily Requires The Jury To Consider Individualized Evidence Relevant To Its Compensatory Purpose.**

**1.    Neither Plaintiffs Nor The Government Refute Defendants' Showing That Basic Principles Of Statutory Construction Indicate The FCRA's Statutory Damages Are Wholly Compensatory.**

As Defendants demonstrated, it follows from the fact that Section 1681n(a) provides for two distinct categories of damages—(1) actual or statutory damages, 15 U.S.C. § 1681n(a)(1)(A), and (2) punitive damages, 15 U.S.C. § 1681n(a)(2)—that the statutory damages recoverable under Section 1681n(a)(1)(A) are compensatory, without any punitive

---

[1] In order to try to maintain this case as a class action, Plaintiffs have conceded that other than the facts relating to the class representatives, there will be no evidence of actual harm introduced as to any other class members.  Therefore, for this case, the Court must accept as true that the class members suffered no actual harm.

Portlnd3-1642387.1 0045556-00006

component.  *See* Opp. at 8-10 (citing *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1168 (D. Kan. 2008) ("The actual or statutory damages in subsection (a)(1), however, are in the nature of compensatory damages."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 342 (N.D. Ill. 2002) ("[T]he language of § 1681n(a)(1)(A) clearly and unambiguously allows for actual or statutory damages as the measure of compensatory damages, but not both.").  *See also Dowell v. Wells Fargo Bank, NA*, 517 F.3d 1024, 1026 (8th Cir. 2008) ("It does not necessarily follow from the cited language [which provides for statutory damages as an alternative to actual damages] that statutory damages are available where a plaintiff fails to prove actual damages.  A reasonable reading of the statute could still require proof of actual damages but simply substitute statutory rather than actual damages for the purpose of calculating the damage award.").  The fact that, for strategic reasons, Plaintiffs waived punitive damages does not alter the statutory analysis.  The proper interpretation of a statute turns on the text and structure of the statute, *In re Rufener Const., Inc.*, 53 F.3d 1064, 1067 (9th Cir. 1995), not on the tactical choices of litigants.

Both Plaintiffs and the Government not only fail to rebut this key point, they concede it.  Plaintiffs squarely state that the "[s]tatutory damages under section 1681n are *not* punitive," Pl. Reply at 6 (emphasis added), and that statutory damages like those at issue here "are at least partly (if not principally) designed to provide *compensation to individual*s where actual damages are difficult or impossible to determine.*"  Id.* at 11 (emphasis added).  The Government also concedes this point, *see* U.S. Br. at 15 ("It is proper for statutory damages … to serve deterrent *as well as compensatory purposes*.") (emphasis added).  The only coherent interpretation of the text and structure of the FCRA is that statutory damages are compensatory.  And an appropriate jury instruction must reflect that fact.

### 2.    Even Under Plaintiffs' And The Government's Interpretations, Evidence Relating To Compensatory Purposes Is Relevant To The Jury's Determination Of The Amount Of Statutory Damages To Award.

To the extent that the FCRA's statutory damages remedy is even partly compensatory, evidence relating to this compensatory purpose is unquestionably relevant to the jury's

Page 3 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

determination of the amount of statutory damages to award. After all, if statutory damages are designed even in part to compensate individuals, the jury must consider how much compensation each individual actually requires. Plaintiffs, however, have taken the position throughout this litigation that evidence going to the compensatory purpose of the FCRA's statutory damages provision is unnecessary and completely irrelevant to the jury's determination of the amount of those damages. *See* Pl. Br. at 8-10; Pl. Reply at 17-18. But Plaintiffs never explain how the FCRA's concededly non-punitive, compensatory purpose (*id.* at 11) can be served without considering any compensatory factors whatsoever.

This position is not only at odds with the common-sense notion that individualized evidence relating to the FCRA's compensatory purpose is relevant to determining the amount of compensation, but is contrary to well-established precedent regarding the same statutes upon which Plaintiffs and the Government rely so heavily. For instance, in actions under the Electronic Communications Privacy Act of 1986, *which the Government cites as an analogous statute*, *see* U.S. Br. at 10, 17 n.3, 34 n.18, courts have denied statutory damages where the defendant's violation was *de minimis* or there was no evidence of harm to the plaintiff. *See, e.g.*, *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818-19 (11th Cir. 2004) (affirming denial of statutory damages where violation was *de minimis*); *Morford v. City of Omaha*, 98 F.3d 398, 401 (8th Cir. 1996) (affirming denial of statutory damages because, *inter alia*, evidence showed plaintiff was illegally recorded for only 90 seconds at most on two total occasions, the recordings were almost immediately destroyed, and the substance of the intercepted communications was never disclosed); *Reynolds v. Spears*, 93 F.3d 428, 436 (8th Cir. 1996) (affirming denial of statutory damages because, *inter alia*, "there were no actual damages incurred by the plaintiffs or profits earned by [defendants]").

Likewise, in actions under the Communications Policy Act of 1984, *which the Government also cites as an analogous statute*, *see* U.S. Br. at 10, 17 n.3, courts have denied statutory damages or awarded the minimum amount where there was no evidence of harm to the plaintiff and the violation was minimal. *See*, *e.g.*, *DirecTV v. Haskell*, 344 F. Supp. 2d 761, 764

Portlnd3-1642387.1 0045556-00006

(D. Me. 2004) (awarding statutory minimum because, among other things, there was no evidence as to how much revenue the plaintiff lost as a result of the defendant's activity).  Indeed, in *Comcast of Massachusetts I, Inc. v. Naranjo*, 303 F. Supp. 2d 43 (D. Mass. 2004), the court squarely held that the amount of statutory damages available under the Communications Policy Act should be based on "as reasonable an estimate of actual damages as the facts . . . allow." *Id.* at 48.  The court rejected the plaintiff's argument that statutory damages must be greater than actual damages in order to have a deterrent effect, noting that the Act's other remedies (e.g., injunctive relief) served this purpose.  *Id.* at 48-49.  *See also Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 181-82 (1st Cir. 2006) (adopting *Naranjo* interpretation of statute).

These same compensatory factors are relevant under the Copyright Act, upon which the Government and Plaintiffs rely especially heavily.  *See* Pl. Br. at 4-5, Pl. Reply at 5, U.S. Br. at *passim.*  In determining the amount of statutory damages under the Copyright Act, courts consider, among other factors, the revenues lost by the plaintiff and the value of the copyright. *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1237 (E.D. Cal. 2008).  *See also Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *HIT Entm't, Inc. v. Nat'l Discount Costume Co., Inc.*, 552 F. Supp. 2d 1099, 1107 (S.D. Cal. 2008).[2]

Thus, it is well-established in a variety of contexts that courts base the amount of statutory damages at least in part on the amount of actual damages and may even deny statutory damages completely where there is no evidence of actual harm.  In fact, in deciding the amount of statutory damages to award under the Communications Policy Act, courts have held that the plaintiff bears the burden of justifying why an award greater than the statutory minimum is justified.  *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1131-32 (M.D. Ala. 2004) ("The burden is on DIRECTV to provide justification for why damages in excess of the minimum should be awarded.").  And, in making that showing, the goal is to provide a "rough

_____

[2] Despite their heavy reliance on the Copyright Act, Plaintiffs and the Government ignore the critical fact that, unlike the FCRA, the Copyright Act does not separately provide for punitive damages.  Thus, statutory damages may serve a deterrent function in that context without rendering it duplicative of a remedy provided elsewhere in the statute.

Page 5 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

approximation of the plaintiff's actual or threatened losses." *KingVision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 966 (N.D. Ill. 2000); *see also Columbia Cable TV Co. v. McCary*, 954 F. Supp. 124, 128 (D.S.C. 1996) (attempting to set statutory damages for Cable Act violation as a "reasonable approximation of plaintiff's losses resulting from defendant's activities").

In attempting to defend the contrary position, Plaintiffs misconstrue the Ninth Circuit's decision in *Six Mexican Workers*. *See* Pl. Reply at 16. Plaintiffs suggest that the Ninth Circuit held that the individual harm to the class members was irrelevant to the determination of damages. *Id.* To the contrary, the Court held that the individual harm to the class members *was* relevant to the amount of statutory damages. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990). Specifically, the Ninth Circuit held that the district court's award of statutory damages between $400 and $1,600 to each class member "exceeded what was necessary to compensate any potential injury from the violations," given that some of the class members worked "only a few hours" and "[i]t is unlikely that a plaintiff who worked only a few hours or days could show an injury that approaches $400." *Id.*

### 3. Evidence Relating To Individual Issues Cannot Be Excluded Simply Because This Is A Class Action.

Clearly, in an individual action, evidence of individual harm—or lack thereof—would be relevant and required. To take as an example only one of the named Plaintiffs in this case, Plaintiff Evelyn Broeffle testified that she noticed a "$20 to $40 increase" in her insurance premium billing statement in May 2000 in advance of her June 2000 automobile policy renewal. *See* Deposition of Evelyn Broeffle ("Broeffle Dep.") at 19-21, Ex. 1 to Supplemental Declaration of Timothy W. Snider ("Supp. Snider Decl."), filed herewith. This was the first time that Farmers used credit report information to rate the Broeffles' auto policy. *See* Ex. 2 to Supp. Snider Decl., Response 10 (showing $19.40 increase at June 2, 2000 transition renewal). Ms. Broeffle then called her Farmers agent to inquire as to the reason for her premium increase:

Q. What did you say to [your Farmers agent]?

Page 6 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

      A.  We said, "Our insurance went up," however much it was.  "Why?"  And he said, "We recently started charging based partially on credit scores, and that's why.  Your credit score in some way indicated we needed to raise your rates."

Broeffle Dep. at 21; *see also id*. at 19-20.  Yet Broeffle testified that even though she knew her premium was increased due to her credit report, and even though she knew how to check her credit report, she did not request her credit report to check for any errors.  *Id*. at 22-24.  It "wasn't worth whatever it was they were charging us extra."  *Id*. at 23-24.  Broeffle further testified that "I can't prove and don't have an attorney that wants to prove actual damages."  *Id*. at 32-33.

      In an individual action, it is inconceivable that this evidence would be excluded.  After all, the crux of the alleged violation here is that class members were not told in the written notice that their credit reports caused a premium increase, thus prompting them to check their credit report for errors.  Broeffle got that information, and did nothing.  This is clearly relevant to the compensatory purposes of the FCRA's statutory damages, and in an individual action the fact-finder would surely be presented with such evidence (or lack thereof) in making a statutory damages award.  The mere fact that the Court has certified a class cannot render this evidence inadmissible.  The class action device is a procedural one that may not alter the evidence required or permitted in an individual action.  *See*, *e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) ("[N]o reading of [Rule 23] can ignore the [Rules Enabling] Act's mandate that rules of procedure shall not abridge, enlarge or modify any substantive right[.]") (internal quotations omitted).  Otherwise, the class action device would not only subject defendants to exponentially larger damage awards but would deprive them of substantive defenses.

## B.    Plaintiffs' Instructions Convert The Statutory Damages Provision Into A Punitive One, Contrary To The FCRA And The Constitution.

      Plaintiffs are trying to have it both ways.  On the one hand, they insist that the FCRA's statutory damages remedy is not punitive (and therefore supposedly immune from meaningful review) because it is partly compensatory in nature.  On the other hand, they have proposed jury

instructions that utterly fail to reflect this compensatory purpose, and invite the jury to punish Defendants.  The Court should not be misled by Plaintiffs' shell game.

As drafted, Plaintiffs' proposed jury instructions would convert the FCRA's statutory damages remedy into a purely punitive one.  Plaintiffs' Requested Jury Instruction No. 4 instructs the jury to consider "the willfulness of the defendant's conduct" and "other circumstances relating to the nature of defendants' violation and defendants' course of conduct" in determining the amount of statutory damages to award.  Moreover, both of Plaintiffs' proposed instructions tell the jury to award an amount between $100 and $1,000 that is "proportionate to the defendants' willful violation."  Leaving aside the incomprehensibility of this instruction, it clearly instructs the jury to award an amount that is punitive, not compensatory, in nature.

The Government implicitly attempts a partial defense of Plaintiffs' flawed instructions by arguing that it is appropriate for a jury to consider "deterrence" factors like intent and economic motivation in determining the amount of statutory damages.  *See* U.S. Br. at 14-17.  But as Plaintiffs concede, the FCRA's statutory damages remedy is compensatory.  Thus, these factors have no relevance.  Even assuming, however, that the FCRA's statutory damages remedy is only partially compensatory, the Government's defense is misplaced because Plaintiffs' proposed jury instructions identify *no* compensatory factors, *despite the fact that Plaintiffs and the Government now concede that statutory damages are partially compensatory*.

### 1.    The Supreme Court's Punitive Damages Jurisprudence Applies To Statutory Penalties Regardless Of Their Label.

Even if Plaintiffs' instructions did not convert the statutory damages provision into a punitive one, it would not be insulated from due process challenge.  Plaintiffs' and the Government's reliance on the term "statutory damages" to argue the contrary position gives undue weight to a label that does not even appear in the statute.  *See* Pl. Reply at 6-11; U.S. Br. at 24-29.  The Supreme Court has made clear that its "well-established" punitive damages case law, *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 427 (2003), applies to statutory

Page 8 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

penalties regardless of their label.  In *Gore* and *State Farm*, for instance, the Court emphasized that due process protections apply to civil penalties generally, not just those styled as punitive damage awards.  *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 n.22 (1996) ("the basic protection against 'judgments without notice' afforded by the Due Process Clause is implicated by civil penalties") (original emphasis; internal citations omitted); *State Farm*, 538 U.S. at 416.[3]

### 2.    Plaintiffs' And The Government's Interpretation Of The FCRA's Remedial Scheme Would Authorize Improper Double Punishment.

But the punitive nature of Plaintiffs' proposed instructions raises additional constitutional concerns.  Interpreting the FCRA's statutory damages provision to permit an award based on punitive criteria would authorize impermissible double punishment because the FCRA separately provides for the recovery of punitive damages.  *See* Opp. at 8-12.  The Government and Plaintiffs respond by claiming that Defendants are asserting that the Double Jeopardy Clause applies here.  *See* Pl. Reply at 6; U.S. Br. at 11.  But this is transparently wrong—a meaningless strawman.  Defendants have never made anything approaching such an assertion.

The Government also points to various criminal statutes that permit the imposition of a fine and a jail term.  *See* U.S. Br. at 11-12.  But this is irrelevant.  Obviously, a statute may afford two *different* remedies—for instance, compensatory damages *and* punitive damages or a fine *and* a jail term.  But what a statute cannot do is impose two *identical* penalties—for instance, two separate jail terms for the same crime, or two awards of punitive damages for the same conduct.  Yet, that is the very risk that Plaintiffs' jury instructions create by construing the FCRA's statutory damages remedy as punitive.  Numerous courts in analogous contexts have found this precluded.  *See, e.g.*, *Reynolds v. Octel Communications Corp.*, 924 F. Supp. 743, 747

---

[3]  Numerous other courts have reached the same conclusion.  For instance, in *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003), the Second Circuit acknowledged as "legitimate" the district court's concern that the Cable Communications Policy Act of 1984 presented "the potential for a devastatingly large [statutory] damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class," and "raise[d] due process issues."  *See also* Opp. at 13-14 & n.9.

Page 9 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

(N.D. Tex. 1995) ("The legislative history of the ADEA indicates that Congress intended for liquidated damages awarded under that statute to be punitive in nature. Were Reynolds to receive both liquidated damages under the ADEA and punitive damages under Title VII, Octel would be punished twice for the same conduct (i.e., terminating Reynolds' employment), because of the jury's finding that that conduct violated both laws. Since the court has already concluded that Reynolds should receive $300,000 in compensatory and punitive damages, she is not entitled to liquidated damages as well.") (internal citations omitted); *Neal v. Honeywell, Inc.*, 995 F. Supp. 889, 896 (N.D. Ill. 1998) ("When liquidated damages are available, punitive damages are not."); *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1059 (S.D. Fla. 1995) ("[T]here can be no doubt that to allow a prevailing plaintiff to recover both liquidated damages under the ADEA, and punitive damages under the FRCA, constitutes double recovery and is therefore impermissible. Essentially, Plaintiffs would be allowed to recover two sets of punitive damages, under two separate statutes, for only one act by K-Mart, the classic example of impermissible double recovery."); *Bailey v. Container Corp. of Am.*, 660 F. Supp. 1048 (S.D. Ohio 1986) (same).

　　　　Nor is the Government's attempt to distinguish *State Farm* any more convincing. The Government suggests that *State Farm*'s concerns are limited to situations where a jury's award of punitive damage is based in part on actual or potential harm to nonparties not bound by the judgment. *See* U.S. Br. at 12. But the Government fails to recognize that Plaintiffs' Requested Jury Instruction No. 4 creates this very risk when it would have the jury consider "other factors relating to the nature of defendants' violation and defendants' course of conduct." This catch-all language is so general and broad as to encompass potential harm to nonparties who will not be bound by this action and who could subsequently sue and obtain an award of statutory or punitive damages based on this same factor and conduct.

　　　　Moreover, the Government's argument that an award of both statutory and punitive damages is not duplicative because statutory damages serve both compensatory and deterrent functions ignores the fact that the FCRA, unlike the Copyright Act, separately provides for

Page 10 -　　DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

punitive damages.  Thus, as Plaintiffs concede, "[s]tatutory damages under section 1681n are *not* punitive"—not even partially.  Pl. Reply at 6 (emphasis added).  The Government's argument also sidesteps the fact that Plaintiffs' proposed instructions ignore the compensatory function entirely.  Thus, even if the FCRA's statutory damages remedy could be interpreted to serve both compensatory and punitive functions, Plaintiffs' proposed instructions do not provide for that.[4]

Finally, Plaintiffs' strategic waiver of punitive damages does not alter this analysis.  As Plaintiffs' counsel conceded in the deposition of Lead Plaintiff Evelyn Broeffle, Plaintiffs "dropp[ed] our punitive damages" because of "[c]onstitutional concerns."  *See* Broeffle Dep. at 34.  This strategic choice, however, does not alter the meaning or constitutionality of Section 1681n.  If Plaintiffs are correct that a jury may award statutory damages under Section 1681n based only on evidence pertaining to the reprehensibility of a defendant's conduct, then the FCRA's statutory damages remedy is unconstitutionally duplicative of its punitive damages remedy regardless of whether Plaintiffs are seeking punitive damages here.

### 3.    The Government's Claim That An Award Of Statutory Damages May Be Based Upon "Potential," Unproven Harm Is Incorrect.

The Government cites *Gore* for the proposition that awards of punitive damages—and thus, supposedly the FCRA's statutory damages—may be based upon "potential harm."  *See* U.S. Br. at 24-25.  But this language derives from *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460-62 (1993) (plurality opinion), one of the Supreme Court's first modern punitive damage decisions, which considered the "potential harm" flowing from a failed scheme to defraud, where the *evidence* showed that the defendant's fraudulent scheme *could have resulted*—but because of fortunate events in fact did not result—in damages *to the plaintiffs* of between $1-4 million on the low end and $5-$8.3 million on the high end.  In this context, the Court held that the "disparity between the punitive award and the potential harm does not, in our

---

[4] The Government also argues that "even compensatory damages *per se* provide deterrence and for that matter 'punishment' as well[.]"  U.S. Br. at 15.  But this is completely irrelevant to the proper *assessment* or *calculation* of the amount necessary to compensate a plaintiff.

Page 11 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

view, jar one's constitutional sensibilities." *Id.* at 462 (internal quotations omitted). *TXO* has no application here, where Plaintiffs have not proffered—and have indicated that they will not proffer—any *evidence* of either actual or potential (but failed) harm.

Moreover, the Government's account of the purported "potential" harm is notable for its utterly speculative nature. *See* U.S. Br. at 22, 25. Ironically, the Government claims that "defendants' assertion that class members did not suffer actual losses is speculative." U.S. Br. at 20 n.6. But this ignores what Plaintiffs have always said about their case: Plaintiffs have consistently taken the position that any evidence of harm is irrelevant. And the Government ignores that *Philip Morris* underscores the due process and vagueness dangers of injecting considerations that invite a jury to "speculate" about unproven harms, which would "add a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured? Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate. And the fundamental due process concerns to which our punitive damages cases refer—risks of arbitrariness, uncertainty and lack of notice—will be magnified." *Philip Morris USA v. Williams*, 127 S. Ct. 1057, 1063 (2007). Plaintiffs' Instruction No. 4, however, encourages exactly this, by vaguely telling the jury to consider "other factors relating to the nature of defendants' violation and defendants' course of conduct," even if no actual evidence of such harms is introduced at trial.

## C.    The Government And Plaintiffs Fail To Address Key Aspects Of Defendants' Vagueness Challenge.

Plaintiffs attempt to allay any concerns that the Court may have concerning their jury instructions by arguing that awards of statutory damages are "given almost complete deference." *See* Pl. Reply at 9. Essentially, Plaintiffs argue that the Court should not be too concerned about the vagueness problems with Plaintiffs' proposed jury instructions because the Ninth Circuit is unlikely to look at the issue very closely. Plaintiffs are wrong.

Portlnd3-1642387.1 0045556-00006

Historically, statutory damage awards have been reviewed for abuse of discretion. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008); *Six Mexican Workers*, 904 F.2d at 1304. But to the extent the Supreme Court's punitive damage jurisprudence applies to a particular statutory damage scheme or award, excessiveness is reviewed *de novo*. *Cooper Indus., Inc*. *v. Leatherman Tool Grp., Inc*, 532 U.S. 424, 431 (2001). And where jury instructions are challenged as misstatements of the law, they are reviewed *de novo*. *Navellier v. Sletten*, 262 F.3d 923, 944 (9th Cir. 2001). But even if statutory damages were accorded unfettered deference, this would argue in favor of *greater* vigilance, not less, by this Court, because any errors would be virtually uncorrectable. For Plaintiffs to suggest otherwise is the height of cynicism.

Plaintiffs and the Government also attempt to dismiss Defendants' vagueness argument as challenging only the FCRA's lack of any guidelines for determining the amount of statutory damages. *See* U.S. Br. at 5-10; Pl. Reply at 3-6. In fact, Defendants challenged two distinct aspects of the FCRA's remedial scheme—the lack of any guidelines and the lack of a cap on aggregated damages—the interaction of which presents unique vagueness problems. *See* Opp. at 5-8. In combination, the absence of these features deprives Defendants of any meaningful notice of the severity of the liability to which they may be subject. Because a jury apparently may award statutory damages *to each member of the class* in an amount between $100 and $1,000 based on whatever factors it happens to think are relevant, a defendant cannot meaningfully anticipate the liability to which it may be subject. While the statutory range is fixed, the aggregation of damages on a class-wide basis introduces a dramatic multiplier effect. For instance, in a class of 200,000 members, the defendant can be held liable for an amount anywhere between $20,000,000 and $200,000,000, *irrespective of any individual harm to any class member*.

Worse still, because the statute is silent as to the factors that should guide the jury's choice within the statutory range, a defendant cannot meaningfully assess whether a jury would award statutory damages at the low or high end of the range or what conduct or factors will

Page 13 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO
APPROVE PROPOSED JURY INSTRUCTIONS

inform the jury's decision.  Absent some objective criteria upon which to base its decision, such as the actual harm to the class members, the jury's choice is essentially an arbitrary one based upon random, unspecified, and inherently subjective factors.

The authorities the Government and Plaintiffs cite thus are inapposite because they do not combine the lack of any statutory guidance with the multiplier effect of an uncapped aggregated award.  For instance, the criminal statute at issue in *United States v. Batchelder*, 442 U.S. 114 (1979), upon which the Government primarily relies, obviously did not permit class recovery. Likewise, even though Plaintiffs and the Government repeatedly analogize to the Copyright Act, plaintiff class actions are almost unheard of in copyright actions.  Accordingly, Plaintiffs and the Government have failed to rebut a critical component of Defendants' vagueness challenge.[5]

Reliance on criminal sentencing law is further unavailing because federal law does provide specific factors to be considered in making a sentencing determination.  18 U.S.C. § 3553(a); *see also* United States Sentencing Guidelines.  It does not leave sentencing decisions in indeterminate sentencing ranges to the whims or unbridled discretion of the Court.  And the Court must articulate the specific reasons for its decision to impose a sentence or fine within a given statutory range (18 U.S.C. § 3553(c)), which decision is subject to appellate review.

Significantly, neither Plaintiffs nor the Government actually defends Plaintiffs' obviously flawed Requested Jury Instruction No. 3, which not only fails to cure the FCRA's vagueness problems but exacerbates them by instructing the jury to award an amount "proportionate to defendants' willful violation."  Except as an exhortation to award an amount punitive in nature, this language is devoid of any decipherable meaning, particularly in light of Plaintiffs' insistence that the economic harm caused by Defendants' conduct cannot be determined.

---

[5] Plaintiffs' reliance on *Mourning v. Family Pub. Serv., Inc.*, 411 U.S. 356, 376 (1973), is also misplaced.  The penalty the Court described as "modest" was the one under Section 130 of the Truth in Lending Act, which at that time "provide[d] that the penalty assessed shall be twice the amount of the finance charge imposed, but not less than $100."  *Id.*  Thus, unlike the FCRA's statutory damages provision, the Section 130 remedy is tied to a precisely quantifiable amount –the finance charge.  This leaves virtually nothing to juror discretion.

Page 14 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO
             APPROVE PROPOSED JURY INSTRUCTIONS

**D.    The Court Must Consider The Potential Excessiveness Of Any Damages Award In Crafting Appropriate Jury Instructions.**

The Government insists that it is somehow inappropriate for the Court to consider the potential unconstitutional excessiveness of any damages award when crafting appropriate jury instructions.  *See* U.S. Brief at 17-19.  This makes no sense.

First, as Defendants noted, it is well-established that courts should construe statutes so as to avoid constitutional problems.  *See, e.g.*, *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005); *Jones v. United States*, 529 U.S. 848, 857 (2000).  Therefore, in interpreting the FCRA for jury instruction purposes, the Court should interpret it in such a way as to avoid, rather than create, potential constitutional problems.

Second, Defendants cited numerous cases in which courts considered the potential excessiveness of any damages award well before the return of a verdict.  For instance, in *Azoiani v. Love's Travel Stops & Country Stores, Inc*., the court denied class certification in part because "allowing statutory damages between $423 million and $4 billion without proof of actual harm [would] violate[] principles of due process."  2007 U.S. Dist. LEXIS 96159, at *11 (C.D. Cal. Dec. 18, 2007).  Likewise, in *Legge v. Nextel Communications, Inc*., the court denied class certification based on due process concerns given the size of any potential award in relation to the actual harm suffered by putative class members.  2004 U.S. Dist. LEXIS 30333, at *47-57 (C.D. Cal. June 25, 2004); *see also Kline v. Coldwell, Banker & Co*., 508 F.2d 226, 234 (9th Cir. 1974) (denying class certification in an antitrust action where the potential damages recoverable under the Clayton Act's treble damages provision "shock[ed] the conscience").[6]  Neither the Government nor Plaintiffs attempt to distinguish these cases; they merely dismiss them.

---

[6]  *See also London v. Wal-Mart Stores, Inc*., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (stating in a Truth-in-Lending case involving supplemental state law claims that "even though economic harm is not an element of the Florida common law claim for restitution, it may be required for superiority under the Federal Rules of Civil Procedure.  This is especially likely when, as in the present suit, the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff."); *Helms v. ConsumerInfo.com, Inc*., 236 F.R.D. 561, 569 (N.D. Ala. 2005) (denying class certification on superiority grounds in action under the Credit Repairs Organization Act because, *inter alia*, the

Page 15 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

Furthermore, the Government's cited cases do not preclude pre-verdict excessiveness challenges; they simply suggest that *pre-certification* challenges are disfavored.  *See*, *e.g.*, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("[C]onstitutional limits are best applied after a class has been certified.  Then a judge may evaluate the defendant's overall conduct and control its total exposure."); *Arcila v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 973 (C.D. Cal. 2007) ("[Raising the prospect of an unconstitutionally excessive damages aware] is premature [at the pleading stage], and would be appropriate at the earliest in opposition to an eventual class certification motion . . . . Thus, though Adidas need not necessarily wait until a verdict before its due process concerns come into play, it must proceed past the pleading stage.") (citations and quotations omitted).  Here, of course, a class has been certified.  Thus, even the Government's cases show the issue is properly before the Court.

Finally, due process requires the Court to take steps, in advance of the jury's verdict, to protect Defendants from excessive or otherwise unconstitutional damage awards.  *See State Farm*, 538 U.S. at 418 ("Vague instructions . . . do little to aid the decisionmaker in its task of assigning appropriate weight to evidence that is relevant and evidence that is tangential or only inflammatory.").  Post-verdict excessiveness review *may* ultimately produce a reduction or judgment in the defendant's favor—but only after severely disrupting the defendant's business, inflicting reputational harm, and imposing significant costs to the litigants, including onerous appeal bonds, and to the civil justice system, including promoting a harmful "jackpot" mentality.

**E.    Any Aggregated Award, Even The Statutory Minimum, Would Violate Due Process In The Absence Of Any Evidence Of Individualized Harm.**

Plaintiffs and the Government insist that it is of no moment that Plaintiffs are seeking recovery on behalf of a class of approximately 200,000 members.  *See* Plaintiffs' Reply at 13-16; U.S. Brief at 32-34.  They are wrong under both the traditional due process analysis that many courts have applied to statutory damage awards, and the Supreme Court's more recent punitive

---

plaintiff suffered no actual damages and the potential damages in any class action "would be devastating and largely out of proportion with the culpability of Defendant's conduct"); *Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491, 504-06 (N.D. Ga. 2006) (same).

Page 16 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

damage cases.  To the contrary, the grossly excessive disproportion between any aggregated award—even the statutory minimum—in this case, and the harm that Plaintiffs have indicated that they will *not* attempt to prove at trial, is crucial to the validity of any judgment.  As presently constituted, the class in this case consists of approximately 200,000 members.  Thus, even an award of the statutory minimum would total $20,000,000.  None of the named Plaintiffs suffered any actual harm, and Plaintiffs have indicated that, in order to maintain this as a class action, they will introduce no evidence of actual harm as to any of the absent class members either.  An award of $20,000,000 thus would clearly be wholly disproportionate and unreasonable.

> **1.    Any Aggregated Award, Even The Statutory Minimum, Would Be "Wholly Disproportionate" Or "Obviously Unreasonable" Under Traditional Due Process Standards.**

In *Six Mexican Workers*, the Ninth Circuit squarely held that the aggregate amount of an award is relevant to determining the permissible size of individual awards:  "When the class size is large, the individual award will be reduced so that the total award is not disproportionate." 904 F.2d at 1309.  The Ninth Circuit's teaching in *Six Mexican Workers* directly refutes Plaintiffs' and the Government's claim that aggregation is irrelevant to excessiveness.[7]

The Ninth Circuit's holding reflects the traditional due process standards, where the test is whether the award is "wholly disproportionate" to actual damages or "obviously unreasonable."  In *Missouri Pacific Railway Co. v. Tucker*, 230 U.S. 340 (1913), for instance, the Supreme Court held that an award of $500 in liquidated damages for a $3 overcharge—a ratio of approximately 166 to 1—was so "grossly out of proportion to the possible actual damages" and "arbitrary and oppressive" as to violate due process.  *Id.* at 351.  Likewise, in *Southwestern*

---

[7]  Similarly, in *Parker*, Judge Newman in a concurring opinion, suggested that a district judge may, as a matter of statutory interpretation, resolve due process concerns raised by aggregation of statutory damages on a classwide basis by awarding substantially less than the statutory damage minimum amount to all but the named plaintiffs who instituted the class action. *Parker*, 331 F.3d at 27 (Newman, J. concurring) (expressing disbelief that "in specifying a $1,000 minimum payment for Cable Act violations, Congress intended to expose a cable television provider to liability for billions of dollars" and instead adopting "a sensible interpretation of a statute, construed against a background of possible constitutional concerns" permitting awards of less than the statutory damages minimum in a class action).

*Telegraph & Telephone Co. v. Danaher*, 238 U.S. 482, 491 (1915), the Court overturned an award of $6,300 in statutory damages where the plaintiff's telephone service had been cut off for late payment—a ratio of 6,300 to 1 (assuming the "harm" even approximated $1)—on the grounds that it was so "plainly arbitrary and oppressive" as to violate due process. *Id*. at 491. Here, where Plaintiffs have disavowed *any* evidence of actual economic injury, even an award of the statutory minimum would be wholly disproportionate to the actual harm ($0).

Plaintiffs and the Government make no attempt to distinguish *Tucker* or *Danaher*, nor can they. Instead, they rely solely on *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919). But in that case, which was decided at a time when the due process clauses of the Fifth and Fourteenth Amendments were not interpreted commensurately, the Court expressly applied a more lenient standard because the law at issue was a state law. *Id.* at 66 ("That this clause [the Due Process Clause of the *Fourteenth* Amendment] places a limitation upon the power of the states to prescribe penalties for violations of their laws has been fully recognized, but always with the express or tacit qualification that the states still possess a wide latitude of discretion in the matter[.]"). And *Williams* was not a class action, and thus posed no danger of aggregation-induced excessiveness. Moreover, the statute at issue was essentially penal in nature, *id.* at 66 ("The provision assailed is essentially penal[.]"), which is why the Court held that it did not need to be proportionate to the actual harm. Here, of course, Plaintiffs deny that the FCRA's statutory damages provision is penal in nature, which, if true, makes *Williams* inapposite.

Furthermore, based principally on *Williams*, Plaintiffs and the Government attempt to argue that awards of statutory damages for a "public wrong" are somehow subject to less stringent review or need not be based on any evidence of actual harm. *See* Pl. Reply at 6-8; U.S. Br. at 20-21. This is incorrect. As an initial matter, Plaintiffs' and the Government's reliance on the Supreme Court's decision in *Williams* is fundamentally misplaced because that decision has been effectively supplanted by the Supreme Court's modern punitive damages cases. As noted above, the Court in *Williams* held that the damages award in that case was "penal in nature." *Williams*, 251 U.S. at 66. The Court did not insist on proportionality to actual damages for

Portlnd3-1642387.1 0045556-00006

precisely this reason.  *Id.*  Today, however, there is little doubt that a penal award of this sort would be subject to the Supreme Court's punitive damages case law—with its emphasis on the punitive-to-compensatory damage ratio.  Accordingly, *Williams* cannot control the analysis here.

Even leaving aside the issue of whether *Williams* remains good law on the proposition for which Plaintiffs and the Government cite it, neither Plaintiffs nor the Government cite any support for the proposition that damages awarded for "public wrongs" are somehow subject to less stringent review.  Indeed, the Supreme Court's punitive damages case law refutes any such suggestion, as the Supreme Court itself repeatedly has recognized that punitive damage awards are justified only by reference to public interests but are nevertheless subject to stringent review.  *See, e.g.*, *Cooper Indus.,* 532 U.S. at 432 (punitive damage awards "operate as 'private fines' intended to punish the defendant and to deter future wrongdoing" and are reviewed *de novo*).

### 2.     Any Aggregated Award, Even The Statutory Minimum, Would Be Excessive Under The Supreme Court's Punitive Damages Case Law.

An aggregate award of $20,000,000 would also plainly be excessive under the Supreme Court's punitive damages case law given that each of the named Plaintiffs has disavowed any evidence of actual harm, and Plaintiffs have indicated that they will introduce no evidence of actual harm as to any other class members.  *State Farm*, 538 U.S. at 426 (explaining that the amount of punitive damages must be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered."); *Gore*, 517 U.S. at 580 ("The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff.").  Likewise, just last Term, in *Exxon Shipping Co. v. Baker*, the Supreme Court underscored the importance of aggregation in the punitive damages context when it clarified that the "substantial" compensatory damages factor in the *Gore* excessiveness analysis refers to the *aggregate* "class recovery," and that "individual awards are not the touchstone."  554 U.S. __, 128 S. Ct. 2605, 2634 n.28 (2008).

The Government attempts to respond by arguing that *Gore* requires only that a punitive damage award be proportionate to "the harm or *potential harm*" suffered by the plaintiffs.  *See*

U.S. Br. at 24 (quoting *Gore*, 517 U.S. at 575) (emphasis in U.S. Brief).  As explained above, however, this argument is unavailing, because under the circumstances here it would authorize the jury to impose a massive punishment based on nothing more than speculation about harms for which there is no evidence.  *See also Philip Morris*, 127 S. Ct. at 1063; *State Farm*, 538 U.S. at 423 ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis[.]").  In addition, any excessiveness review must be guided by, among other things, the ratio between punitive damages and *compensatory* damages.  *See State Farm*, 538 U.S. at 425 ("few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process").

### III.    CONCLUSION

For the reasons set forth above and in Defendants' Opposition, the Court should reject Plaintiffs' proposed instructions and should follow the lead of the *Grimes* court and declare the FCRA's damage scheme unconstitutional.  In the alternative, the Court should (1) proceed with a willfulness trial and decertify the class for purposes of determining damages,[8] following the lead of those courts within and without the Ninth Circuit that have refused to certify classes under the FCRA because of the constitutional infirmities Defendants have identified; (2) institute a claims procedure for determining damages on a class-member-by-class-member basis; or (3) give the instruction Defendants have proposed in the event the issue of damages is tried to a jury.

DATED:  October 3, 2008.                    STOEL RIVES LLP

                                             */s/  Timothy W. Snider*
                                            Barnes H. Ellis, OSB No. 640325
                                            Timothy W. Snider, OSB No. 034577

                                            Attorneys for Defendants

---

[8]  Class members will get the benefit of a class-wide willfulness determination and will be free to file their own suits for damages purposes.

Page 20 -    DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE PROPOSED JURY INSTRUCTIONS REGARDING WILLFULNESS AND STATUTORY DAMAGES AND IN OPPOSITION TO THE UNITED STATES' REPLY BRIEF IN SUPPORT OF CONSTITUTIONALITY OF FCRA'S STATUTORY DAMAGES PROVISION** on the following named person(s) on the date indicated below by electronic service through the U.S. District Court of Oregon CM/ECF system, to said person(s) a true copy thereof, at their last-known address(es) indicated below.

> Steve D. Larson
> slarson@ssbls.com
> Stoll Stoll Berne Lokting & Shlachter, PC
> Suite 500
> 209 SW Oak Street
> Portland, OR  97204
>
> Charles A. Ringo
> charlie@ringolaw.com
> Charlie Ringo & Associates
> 974 NW Riverside Blvd.
> Bend, OR  97701
>
> Attorneys for Plaintiffs
>
> Kelly Zusman
> Assistant United States Attorney
> Mark O. Hatfield U.S. Courthouse
> 1000 SW Third Ave., Suite 600
> Portland, OR 97204

Page 1 - CERTIFICATE OF SERVICE

Daniel K. Crane-Hirsch
Trial Attorney, Office of Consumer Litigation
U.S. Department of Justice
PO Box 386
Washington, DC 20044-0386

        Attorneys for Plaintiff United States of America

DATED:  October 3, 2008.

        */s/ Timothy W. Snider*
        BARNES H. ELLIS, OSB NO. 640325
        STEPHEN A. REDSHAW, OSB NO. 944146
        TIMOTHY W. SNIDER, OSB NO. 034577
        TELEPHONE:  (503) 224-3380
        FACSIMILE:  (503) 220-2480

        Attorneys for Defendant

Page 2 - CERTIFICATE OF SERVICE