IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOUGLAS ASHBY, CAROL PORTO,                  01-CV-1446-BR
GRANT WENZLICK, LEO NEWBERRY,
and EVELYN BROEFFLE,                         OPINION AND ORDER

        Plaintiffs,

v.

FARMERS INSURANCE COMPANY OF
OREGON and FARMERS GROUP, INC.,

        Defendants.


N. ROBERT STOLL
STEVEN D. LARSON
DAVID F. REES
MARK A. FRIEL
Stoll Stoll Berne Lokting & Schlachter, P.C.
209 S.W. Oak St., Fifth Floor
Portland, OR 97204
(503) 227-1600

CHARLES A. RINGO
974 N.W. Riverside Blvd.
Bend, OR 97701
(503) 330-6447

        Attorneys for Plaintiffs


1 - OPINION AND ORDER

**BARNES H. ELLIS**
**STEPHEN A. REDSHAW**
**TIMOTHY W. SNIDER**
Stoel Rives, LLP
900 S.W. Fifth Ave., Suite 2600
Portland, OR  97204-1268
(503)224-3380

      Attorneys for Defendants

**BROWN, Judge.**

      This matter comes before the Court on Plaintiffs' Motion in Limine (#485) to exclude trial testimony by independent contractor insurance agents[1] (hereinafter referred to merely as agents) relating to oral communications that the agents had with insureds about Defendants' use of consumer credit reports when setting the premiums charged to the insureds.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the Motion.


                        **<u>BACKGROUND</u>**

      In this class action, the Court previously has held the "adverse-action notice" that Defendants sent to insureds whose premiums increased based on information in their consumer credit reports reflected an objectively unreasonable interpretation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681m(a).

---

     [1] As the name implies, independent contractor insurance agents are not employees of Defendants.

2  - OPINION AND ORDER

*Ashby v. Farmers Ins. Co. of Or.,* 565 F. Supp. 2d 1188, 1215 (D. Or. 2004).  Defendants, however, also moved for summary judgment on the ground that even if their interpretation of FCRA was objectively unreasonable and, therefore, their adverse-action notice violated FCRA, Plaintiffs' class members were not entitled to statutory damages under FCRA because Defendants did not willfully violate FCRA as a matter of law.  *See* 15 U.S.C. § 1681n(a)(1)(A).  The Court denied Defendants' Motion for the reason that genuine issues of material fact existed as to whether Defendants' conduct was willful.  *Ashby,* 565 F. Supp. 2d 1188, 1215 (D. Or. 2008).

The Court also rejected Defendants' contention that oral communications between agents and insureds regarding the impact of the insureds' consumer credit reports on the amount of the premiums charged for insurance were an adequate substitute for written adverse-action notices:

> Defendants did not have any program to supplement written notice of an adverse action with oral notification.  Moreover, there is not any evidence in the record that Defendants intended their agents to have the flexibility to delve into details of any adverse actions that were not contained in the written notice.

*Id.* at 1211.

The Court did not reach the question whether evidence of oral communications between agents and insureds might be admissible on the issue of willfulness at the upcoming trial.

3  - OPINION AND ORDER

## DISCUSSION

Defendants propose to offer evidence at trial of oral communications between their agents and insureds to support their contention that they did not willfully violate FCRA. In addition, even if the jury finds they willfully violated FCRA, Defendants contend the communications are relevant as to the amount of statutory damages within the range of $100-$1000 that may be awarded to class members who engaged in such communications.  The premise of Defendants' latter contention is that statutory damages are intended to be a "rough approximation of the [class member's] actual or threatened losses."  Defs.' Mem. at 21.  Thus, according to Defendants, communications between agents and class members that would have enabled the class members to understand the relationship between the increase in their premiums and their credit scores and, as a result, allow them to take the necessary action to improve their credit scores are relevant to the determination of the amount between $100 and $1000 that those class members should recover.

Plaintiffs argue evidence of oral communications between agents and some insureds is not admissible for any purpose in light of this Court's prior ruling that "evidence of *ad hoc* oral communications . . . is not relevant as to whether [Defendants] sent a notice that adequately complied with § 1681m(a)."  *Ashby*, 2004 WL 2359968, *3.

4  - OPINION AND ORDER

I.   **Willfulness**.

According to Plaintiffs, any evidence of oral communications between agents and class members is irrelevant because "defendants never had any intention of using [their] independent agents to supplement [their] defective written notice."  Pls.' Mem. at 4.  Plaintiffs offer evidence that the agents who sold Defendants' insurance products were not specifically instructed to advise their clients orally that they had suffered adverse actions regarding the cost of their renewal insurance premiums because of their credit scores.  According to Jon Gardner, an agent, some agents initiated communications with or responded to questions from their clients regarding such premium increases.  In addition, all agents placed Defendants' written adverse-action notices in envelopes sent to insureds upon renewal of their insurance policies.

Defendants, however, also offer evidence from named Plaintiffs and agents relating to communications in which the agents generally advised their clients, including some named Plaintiffs, that their premiums were based in part on information in their credit reports and that they could reduce their premiums if they improved their credit scores.  In these communications, some agents relied on a "Q & A" document produced by Defendants that advised the agents how to respond to client inquiries

regarding increased premiums.

On this record, the Court concludes evidence that Defendants implemented an oral notification program for the purpose of complying with FCRA's adverse-action notice requirements is generally relevant to rebut Plaintiffs' assertions that Defendants violated FCRA willfully.  In particular, such evidence would tend to support Defendants' argument that even though the oral notification program in and of itself may not have satisfied FCRA's adverse-action notice requirements, Defendants' efforts to comply with FCRA's adverse-action notice requirements were not so deficient as to constitute a willful violation of FCRA when Defendants' written and oral adverse-action notices are considered together.

To be admissible regarding Defendants' state of mind, however, Defendants will first need to establish an appropriate foundation for such evidence.  For example, if Defendants show that such oral communications were associated with an oral notification program established by Defendants for the purpose of supplementing Defendants' written adverse-action notifications to comply with FCRA, the Court concludes the evidence would be admissible on the issue of willfulness.  The Court cannot at this stage rule out other potential foundational premises. Accordingly, the Court will screen Defendants' proffers on this subject as the issues are framed for the Pretrial Conference.

6  - OPINION AND ORDER

**II.  Range of Statutory Damages.**

Defendants also contend evidence of oral communications between agents and Defendants' insureds is relevant to the determination of the amount of statutory damages within the range of $100-$1000 that may be awarded to each class member if Defendants' FCRA violation is found to be willful.  Defendants argue statutory damages are compensatory in nature, and, therefore, the amount of damages that may be awarded to each class member necessarily must be based on compensatory factors. Defendants suggest the following factors are relevant to the jury's determination of a statutory (*i.e.,* compensatory) damage award to each class member:  (1) whether the class member read and understood the adverse-action notice; (2) if so, whether the class member checked his or her credit report; (3) if so, whether there were any errors; and (4) whether the class member received an oral notice from his agent that the class member's premium increase was due to his credit report.

Defendants assert the jury would not have any basis to award an individual class member an amount greater than the statutory minimum of $100 in the absence of evidence from that class member to establish the applicability of one or more of the above factors.  Defendants, however, pointedly argue that if the Court were to adopt their proposal, this case as a practical matter could not be tried as a class action, at least as to damages.  In

7 - OPINION AND ORDER

that circumstance, Defendants recommend the Court bifurcate the
trial by submitting the issue of willfulness to the jury.  If the
jury finds Defendants acted willfully, Defendants maintain it
would be reasonable for the Court to establish a fact-finding
process whereby each class member would have the opportunity to
submit a claim for an award of $100-$1000 to be evaluated based
on the compensatory factors set out above.

        The Court finds unpersuasive Defendants' premise that an
individual class member's award should be limited to $100
unless the class member submits evidence relating to one or
more of the factors identified by Defendants to justify an award
greater than that amount.  FCRA plainly allows for an award of
unlimited actual damages or, as an alternative, statutory
damages within the specified range of $100 to $1000.  15 U.S.C.
§1681n(a)(1)(A).  The factors Defendants identify may be relevant
if a plaintiff is seeking actual damages.  There is not any basis
to conclude they would be relevant, however, when a plaintiff is
seeking statutory damages.  In *Ramirez v. v. Midwest Airlines,
Inc.,* the court addressed this issue at length:

> Here, {FCRA] provides for actual damages "or"
> statutory damages.  In light of the fact that
> the word actual damages is notably absent
> from the statutory damages provision, it is
> clear that a showing of actual damages is not
> required to recover statutory damages.
> Moreover, the availability of statutory
> damages without a showing of actual damages
> provides for a coherent and consistent
> statutory scheme.  Section 1681n creates a

8 - OPINION AND ORDER

private right of action for a willful
violation of FCRA whereas 1681o provides the
private right of action for a violation that
is merely negligent, as opposed to willful.
Significantly, the analogous provision of
§1681o permits only actual damages; it
contains no counterpart to the statutory
damage provision in 1681n.  Thus, FCRA
permits statutory damages in willful
noncompliance cases, but not in negligent
noncompliance cases.  In sum, the lack of
ambiguity in the plain language of the
statute as well as the coherency and
consistency of the dichotomous statutory
scheme reflects that a showing of actual
damages is not required to recover the
statutory damages permitted under
1681n(a)(1)(A) in a willful noncompliance
case.

537 F. Supp. 2d 1161, 1168 (D. Kan. 2008).

This Court concurs with the reasoning in *Ramirez* and

concludes FCRA does not require that an award of statutory

damages greater than $100 to each class member be supported by

proof of actual harm or other circumstances specific to the class

member rather to the class as a whole.  Accordingly, the Court

concludes agents' oral communications with named Plaintiffs and

other individual class members are not relevant when determining

the amount of statutory damages between $100 and $1000 that may

be awarded to them.[2]

---

[2] The Court will address the factors appropriate for the
jury to consider in reaching a decision as to a statutory damage
amount between $100 and $1000 in a separate Opinion and Order
relating to proposed jury instructions.

9 - OPINION AND ORDER

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion in Limine (#485) to exclude trial testimony by independent contractor insurance agents relating to oral communications that the agents had with insureds about Defendants' use of consumer credit reports when setting the premiums charged to insureds.

IT IS SO ORDERED.

DATED this 4th day of November, 2008.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


10 - OPINION AND ORDER